UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JESSICA MARIA MEDINA,

                            Plaintiff,

   -v-

SUPERINTENDENT SABINA KAPLAN,
DEPUTY OF SECURITY MURPHY, SERGANT
WYNAM, SERGANT SWANHART, DR.
MCDERMOTT,

                            Defendants.

No. 16-CV-7223 (KMK)

OPINION & ORDER

Appearances:

Jessica Maria Medina
Bedford Hills, NY
*Pro Se Plaintiff*

Julinda A. Dawkins, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      Pro se Plaintiff Jessica Maria Medina ("Plaintiff") brings this Action against Defendants Bedford Hills Correctional Facility Superintendent Sabina Kaplan ("Kaplan"), Deputy Superintendent of Security Murphy ("Murphy"), Sergeant Wyman ("Wyman"), Sergeant Swanhart ("Swanhart"), and Dr. McDermott ("McDermott") alleging violations of her constitutional and statutory rights pursuant to 42 U.S.C. § 1983. Defendants Kaplan, Murphy, Wyman, Swanhart, and McDermott (collectively, "Moving Defendants") have moved to dismiss Plaintiff's Complaint for failure to exhaust her administrative remedies, lack of personal

involvement, and failure to state a claim. Defendants also assert that they are entitled to qualified immunity. For the reasons to follow, the Motion is granted.

I. Background

A. Factual Background

The following facts are taken from the Complaint and are accepted as true for the purposes of this Motion. At the time of the events described herein, Plaintiff was an inmate at Bedford Hills Correctional Facility ("Bedford Hills").[1]

Plaintiff alleges that, on the afternoon of June 29, 2016, she was placed under mental health observation without cause and in the process was "threaten[ed]" and subjected to excessive force. (Compl. § II(D) (Dkt. No. 2).) Specifically, Plaintiff contends that she was subjected to an "illegal anal cavity search," was beaten and forcefully injected with medicine from the Office of Mental Health ("OMH"), and was later "denied medical & PREA [Prison Rape Elimination Act]." (*Id.*)[2] Plaintiff also alleges that her cell was "torn apart" and that a "lawsuit on another incident disappeared" during the course of a cell search. (*Id.*) Plaintiff contends further that Murphy "had [her] on a cell-shield [without] an order extension." (*Id.*)[3]

---

[1] Plaintiff was released from the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") on December 20, 2016. (*See* Dkt. No. 23.)

[2] The Prison Rape Elimination Act was enacted in 2003 to "provide for the analysis of the incidence and effects of prison rape in Federal, State, and local institutions and to provide information, resources, recommendations and funding to protect individuals from prison rape." Prison Rape Elimination Act of 2003, Pub. L. No. 108-79, 117 Stat. 972 (2003).

[3] "A cell shield is a transparent cell front covering, equipped to provide adequate ventilation." 7 N.Y.C.R.R. § 305.6(a). "Cell shields may be ordered for good cause," and are implemented to address issues such as inmates' spitting through the cell door, the throwing of feces, urine, food, or other objects through the cell door, and an inmate's refusal to keep his/her hands within the cell and/or otherwise attempt to assault or harass staff. *Id.* at § 305.6(b).

2

Plaintiff alleges that she suffered a multitude of injuries from the alleged misconduct, including lacerations, gashes, contusions, swelling, scratches, a shoulder "dis-re-locat[ion]," a "twisted" and "bent" finger, and "symptoms of a torn ACL." (*Id.* § III.) Following the incident, Plaintiff filed a grievance, "spoke to PREA," and made "sick-call request[s]" which were not responded to. (*Id.* § IV(G).) Plaintiff did not file an appeal. (*Id.* § IV(F)(3).) Plaintiff contends that she "could not go to the superintendent whom [sic] threatened the video would disappear before [she] got to file or contact an attorney." (*Id.* § IV(I).)[4]

B. Procedural History

Plaintiff filed her Complaint on September 14, 2016. (*See* Dkt. No. 2.) On December 12, 2016, Plaintiff filed a request for a Temporary Restraining Order ("TRO") against Defendants. (Pl.'s Notion of Mot. for the Immediate/Effective T.R.O. (Dkt. No. 11).) Defendants responded to the TRO on April 7, 2017, stating the TRO should be denied as moot because Plaintiff was released from the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") on December 20, 2016. (Defs.' Reply to Motion for a Temporary Restraining Order 1 (Dkt. No. 23).) Pursuant to a Memo Endorsement on April 16, 2017, the Court dismissed the TRO as moot. (Dkt. No. 24.)

Because Plaintiff had not updated her mailing address following her December 20, 2016 release from prison, on April 16, 2017, the Court also reminded Plaintiff of her obligation to keep the Court and Defendants aware of her mailing address and that failure to do so could result

---

[4] There is no indication in Plaintiff's Complaint whether this is a specific reference to Kaplan, Murphy, or some other unnamed superintendent at the facility.

3

in dismissal of her case. (*Id.*; *see also* Dkt. No. 8 ("Plaintiff also must notify the Court in writing if her address changes, and the Court may dismiss the action if she fails to do so.").)[5]

Defendants Kaplan, Murphy, Wyman, Swanhart, and McDermott moved to dismiss the Complaint for failure to exhaust administrative remedies; for lack of personal involvement of Defendants Kaplan, Wyman, Swanhart, and McDermott in the alleged constitutional violations; and for failure to state a claim against Defendant Murphy. (Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("Defs.' Mem.") 3–9 (Dkt. No. 21).) Defendants also moved to dismiss on qualified immunity grounds. (*Id.* 9–10.)

The deadline for Plaintiff to submit an opposition to Defendants' Motion to Dismiss was April 8, 2017, (Dkt. No. 19), but Plaintiff has not filed an opposition, (*see* Letter from Julinda Dawkins, Esq., to Court (May 18, 2017) (Dkt. No. 25).)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal

---

[5] Plaintiff had previously apprised the Court of a change of address while in prison on November 16, 2016. (*See* Dkt. No. 8.)

quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)

(internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [her] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

B.  Analysis

Moving Defendants raise four arguments: (1) Plaintiff has failed to exhaust her administrative remedies; (2) Plaintiff has failed to allege the personal involvement of Kaplan, Wyman, Swanhart, and McDermott in any constitutional violations; (3) Plaintiff has failed to state a claim against Murphy; and (4) the Defendants are entitled to qualified immunity. (Defs.' Mem. 1–2.) The Court will address each in turn.

1.  Exhaustion of Administrative Remedies

Defendants first move to dismiss Plaintiff's complaint on the grounds that she failed to exhaust her administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"). (Defs.' Mem. 3–6.) The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement applies to all personal incidents while in prison, *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes"); *see also Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) (same), including actions for monetary damages despite the fact that monetary damages are not available as an administrative remedy, *Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding exhaustion is required "regardless of the relief offered through administrative procedures"). Moreover, the PLRA mandates "'proper exhaustion'—that is, 'using all steps that the agency holds out, and doing so properly,' . . . [which] entails . . . 'completing the administrative review process in accordance with the applicable procedural rules.'" *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (alteration omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88, 90 (2006)); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

Prisoners in the custody of DOCCS must exhaust all levels of the Inmate Grievance Program ("IGP") process even if they do not receive a response from the Inmate Grievance Resolution Committee ("IGRC") or superintendent. *See Dabney v. Pegano*, 604 F. App'x 1, 4–5 (2d Cir. 2015) ("The IGP provides a clear timeline for appealing grievances to the [Central Office Review Committee ('CORC')], which applies even when the prisoner does not receive a timely decision from the IGRC or a superintendent. [The] [p]laintiff therefore had an unimpeded path to the CORC, notwithstanding his claims that the . . . grievance clerk failed to process his complaint and that the . . . superintendent ignored his appeal." (citation omitted)); *see also Jackson Little v. Mun. Corp., City of New York*, No. 12-CV-5851, 2017 WL 1184326 (S.D.N.Y. Mar. 29, 2017) (same). If a plaintiff does not receive a response from the IGRC, she normally

7

must file an appeal with the prison superintendent and then with the CORC to fully exhaust her grievance.  Indeed, the IGP explicitly states that "matters not decided within the time limits may be appealed to the next step."  7 N.Y.C.R.R. § 701.6(g)(2); *see also id.* § 701.8(g) (same for expedited harassment grievances).

The PLRA does, however, "contain[] its own, textual exception to mandatory exhaustion."  *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016).  The Supreme Court recently explained:

> Under § 1997e(a), the exhaustion requirement hinges on the "availab[ility]" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.  And that limitation on an inmate's duty to exhaust . . . has real content. . . .  [A]n inmate is required to exhaust those, but only those, grievance procedures that are "capable of use" to obtain "some relief for the action complained of."

*Id.* at 1858–59 (quoting *Booth*, 532 U.S. at 738).

There are "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."  *Id.* at 1859.  First, an "administrative procedure is unavailable when . . . it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  *Id.*  Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.  In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it."  *Id.*  Third, an administrative remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id.* at 1860.  These three circumstances "do not appear to be exhaustive," *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), but they do "guide the Court's inquiry," *Khudan v. Lee*, No. 12-CV-8147, 2016 WL 4735364, at *5 (S.D.N.Y. Sept. 8, 2016).

A plaintiff need not plead that one of these three circumstances exists or that she did in fact exhaust her administrative remedies, because the "[f]ailure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement." *Williams*, 829 F.3d at 122. Defendants bear the burden of proving that Plaintiff failed to exhaust her available administrative remedies. *See McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003) ("[The] defendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with particularity."); *see also Williams*, 829 F.3d at 122 ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints." (internal quotation marks omitted)). Thus, a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted only if "nonexhaustion is clear from the face of the complaint." *Lovick v. Schriro*, No. 12-CV-7419, 2014 WL 3778184, at *4 (S.D.N.Y. July 25, 2014) (alterations and internal quotation marks omitted); *see also Lee v. O'Harer*, No. 13-CV-1022, 2014 WL 7343997, at *3 (N.D.N.Y. Dec. 23, 2014) ("Dismissal under Rule 12(b)(6) for failure to exhaust is appropriate if such failure is evidenced on the face of the complaint and incorporated documents."); *Sloane v. Mazzuca*, No. 04-CV-8266, 2006 WL 3096031, at *4 (S.D.N.Y. Oct. 31, 2006) ("[B]y characterizing non-exhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss." (internal quotation marks omitted)).

With respect to her claims regarding excessive force or interference with her mail, Plaintiff did not fully exhaust her administrative remedies. In her Complaint, Plaintiff admits that while she did file a grievance, she did not appeal the grievance to either the superintendent or CORC. (Compl. § IV(F)(3).) As such, Plaintiff did not complete the requisite three-step grievance process before filing her lawsuit. Therefore, Plaintiff's "nonexhaustion is clear from

the face of the complaint." *Lovick*, 2014 WL 3778184, at *4 (alteration and internal quotation marks omitted).

Moreover, the IGP does not embody a process which is "[in]capable of use to obtain relief." *Ross*, 136 S. Ct. at 1859. Plaintiff has offered no facts which would indicate that the IGP operates as a "simple dead end," or that it is "so opaque that it becomes, practically speaking, incapable of use" such that "no ordinary prisoner [could] discern or navigate it." *Id.* Indeed, Plaintiff completed the first step of the process by filing the grievance, (Compl. § IV(E)), which demonstrates that Plaintiff was able to "discern" the IGP. *See id*.

Plaintiff's assertion that the superintendent's threat that "the video would disappear before [she] got to file anything" does not amount to a "thwart[ing]" of her ability to "take advantage of a grievance process." *Id.* at 1860. (Compl. § IV(I).) Conclusory allegations of intimidation are insufficient to establish the unavailability of administrative remedies. *See Khudan*, 2016 WL 4735364, at *6 (finding on summary judgment that alleged threats without specification of the dates, locations, and names of officers were not sufficient in thwarting the availability of administrative remedies). Accusations which are "unsupported" and "stand alone" are similarly insufficient. *See id*. Here, Plaintiff's Complaint gives no indication as to the contents of the video and when the supposed threat occurred. There is no allegation that the threat was even related to her grievance and ability to exhaust available administrative relief. In fact, Plaintiff was able to complete the first step of the grievance procedure in spite of the alleged threat, (Compl. § IV(E)), indicating that her ability to take advantage of the grievance process was not thwarted by the supposed threat. Moreover, there is no indication that the alleged threat impeded Plaintiff's ability to appeal her grievance to the superintendent. *See Ross*, 136 S. Ct. at 1860 (recognizing grievance procedures as "unavailable" if threats or intimidation prevent

prisoner from seeking an administrative remedy). Aside from these generalized allegations of threats, there is no indication that Plaintiff would have been unable to file an appeal of her grievance, if she so desired. *See* 7 N.Y.C.R.R. § 701.5(c) (outlining second step for appeal). Therefore, because "nonexhaustion is clear from the face of the Complaint," *Lovick*, 2014 WL 3778184, *4 (internal quotation marks omitted), Defendants' Motion To Dismiss for failure to exhaust administrative remedies is granted with respect to Plaintiff's claims of excessive force and loss of her legal documents.

However, to the extent that Plaintiff claims she was sexually abused or harassed during the course of the alleged incident, she is "not required to file a grievance . . . to satisfy the . . . [PLRA]." 7 N.Y.C.R.R. § 701.3(i). Indeed, "any allegation concerning an incident of sexual abuse or sexual harassment shall be deemed exhausted if official documentation confirms that . . . [Plaintiff] reported the incident to facility staff." *Id.* § 701.3(i)(1) (citation omitted). While the Complaint here does not specifically contend that Plaintiff was sexually abused, it does indicate that she was subjected against her will to an allegedly illegal anal cavity search and that she "spoke to PREA" regarding the incident. (Compl. § II(D).) Liberally construing her complaint and "interpret[ing] [it] to raise the strongest arguments that [it] suggest[s]," *Sykes*, 723 F.3d at 403 (internal quotation marks omitted), the Court infers an accusation of sexual abuse from the Complaint, *see Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) ("Because sexual abuse by a corrections officer may constitute serious harm inflicted by an officer with a sufficiently culpable state of mind, allegations of such abuse are cognizable as Eighth Amendment claims."). As such, because Plaintiff both alleges an incident of sexual abuse and reported the incident to facility staff, she is not required to file a grievance under 7 N.Y.C.R.R. § 701.3(i), much less follow the three-step IGP, in order to satisfy the PLRA's exhaustion

11

requirement. *See* 7 N.Y.C.R.R. § 701.3(i). Therefore, Defendant's Motion To Dismiss for failure to exhaust administrative remedies is denied with respect to Plaintiff's claims of sexual abuse.

### 2. Personal Involvement

Defendants Kaplan, Wyman, Swanhart, and McDermott next move to dismiss the Complaint for failure to allege their personal involvement in the incident. "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013); *see also Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted)). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Grullon*, 720 F.3d at 139 (alterations, italics, and internal quotation marks omitted). In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the [law]." *Iqbal*, 556 U.S. at 676; *see also Fortunato v. Bernstein*, No. 12-CV-1630, 2015 WL 5813376, at *6 (S.D.N.Y. Sept. 1, 2015) ("Supervisory status, without more, is not sufficient to subject a defendant to [§] 1983 liability." (internal quotation marks omitted)). Accordingly,"[i]n an action under 42 U.S.C. § 1983, [the] defendants cannot be held liable under a theory of

respondeat superior." *Quezada v. Roy*, No. 14-CV-4056, 2015 WL 5547277, at *7 (S.D.N.Y. Sept. 18, 2015) (citing *Monell v. City of N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Therefore, Plaintiff must plausibly allege conduct by each Defendant that falls into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

With respect to the allegations raised here, as an initial matter, "a complaint that essentially regurgitates the relevant 'personal involvement' standard, without offering any facts indicating that, or how, an individual defendant in a supervisory role was personally involved in a constitutional violation, cannot withstand dismissal." *Davis v. County of Nassau*, 355 F. Supp. 2d 668, 677 (E.D.N.Y. 2005). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (alteration and internal quotation marks omitted). With the exception of Sergeant Murphy, Plaintiff's Complaint fails to personally name *any* of the Defendants or offer *any* facts indicating their involvement in the alleged constitutional violations. (Compl. § II(D).) Plaintiff describes being beaten and forcefully injected "with OMH medicals," but the Complaint is silent as to which, if any, Defendant was involved in the alleged incident. (*Id.*) When alleging her "lawsuit on another incident disappeared," Plaintiff makes no mention of who "tore apart" her cell. (*Id.*) Plaintiff does not allege the personal involvement of any Defendant with respect to her claims involving excessive force and sexual abuse. Indeed, Plaintiff only refers to Murphy as "threatening" her and "[putting] [her] on a cell-shield [without] an order extension." (*Id.*) Plaintiff failed to even simply "regurgitate[] [a] relevant 'personal involvement' standard" by which she could have pled facts showing the

13

personal involvement of Kaplan, Wyman, Swanhart, or McDermott. *Davis*, 355 F. Supp. 2d, at 677.

Accordingly, the Court holds that Plaintiff has not stated a claim against Kaplan, Wyman, Swanhart, or McDermott because she has not plausibly alleged their personal involvement in violations of Plaintiff's constitutional rights, and the Motion is therefore granted in that respect. The Court also holds that Plaintiff has not stated a claim against Murphy for his personal involvement with respect to Plaintiff's claims of excessive force and sexual abuse (which are separate from the claims regarding Murphy's threat and use of the cell shield, discussed below), and the Motion is therefore granted in that respect.

### 3. Failure to State Claim

Defendant Murphy, whose personal involvement *is* alleged regarding some claims, *see Grullon*, 720 F.3d at 139, (Compl. § II(D)), moves to dismiss for Plaintiff's failure to state a claim, (Defs.' Mem. 7). With respect to Murphy's involvement, Plaintiff alleges only that Murphy "threaten[ed]" her and put her "on a cell-shield [without] an order extension." (Compl. § II(D)). Murphy asserts that "the allegations against [him] are merely conclusory, insufficient, and do not state a viable claim of a constitutional violation." (Defs.' Mem. 7.)

It is well established that to state a cognizable claim for an Eighth Amendment violation under § 1983, "the alleged 'punishment' must be, 'objectively, sufficiently serious.'" *Boddie*, 105 F.3d at 861 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Similarly, complaints which contain conclusory allegations of constitutional violations cannot survive a motion to dismiss." *Iqbal*, 556 U.S. at 687.

Plaintiff's accusations of a "threat" by Murphy do not amount to a legally cognizable constitutional or statutory violation. As a general matter, constitutional violations do not arise

14

from mere "insulting or disrespectful comments directed at an inmate." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (finding that "sarcastic" comments do not, without more, constitute a Constitutional violate for First Amendment purposes); *see Cole v. Fischer*, 379 F. App'x 40, 43 (2d Cir. 2010) ("Verbal harassment, standing alone, does not amount to a constitutional deprivation."). Indeed, the courts have held that "verbal harassment of inmates by prison officials, unaccompanied by any injury—no matter how inappropriate, unprofessional, or reprehensible it might seem—does not rise to the level of a violation of the Eighth Amendment." *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 589 (S.D.N.Y. 2015) (quoting *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 459 (N.D.N.Y. 2009)); *Sloane v. W. Mazzuca*, 04-CV-8266, 2006 WL 3096031, at *11 (S.D.N.Y. Oct. 31, 2006) (same). In other words, "allegations of verbal harassment or threats are generally an insufficient basis for an inmate's § 1983 claim." *Rosales v. Kikendall*, 677 F. Supp. 2d 643, 648 (W.D.N.Y. 2010) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986)). Additionally, courts approach such claims with "with skepticism and particular care," *see Davis*, 320 F.3d at 352, given the "the ease with which claims [of verbal threats] may be fabricated," *Colon*, 58 F.3d at 872.

Although Plaintiff does contend that she was injured during the course of the alleged incident, (Compl. § III), such injuries are not claimed in conjunction with Murphy's "threat." (*Id.*, § II(D).) Indeed, Plaintiff's claims of injury from excessive force and sexual abuse fail to allege the personal involvement of any of the Defendants—including Murphy—and have been dismissed. *See supra* Part II(B)(2). Here, Plaintiff simply claims Murphy "threatened her" during the cell extraction. (Compl. § II(D).) Plaintiff makes no accusations that Murphy played any role in her injuries. (*Id.*) Even when liberally construed, Plaintiff's contentions are vague and overly general. *See Micolo*, 2016 WL 6404146, at *8 (explaining that such allegations

"cannot withstand a motion to dismiss"). There is no indication whatsoever that Murphy's threat was so "objectively, sufficiently serious" as to constitute "punishment under the Eight Amendment." *Boddie*, 105 F.3d at 861 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Therefore, because Murphy's threat was not alleged to have been accompanied by injury, Plaintiff has failed to state a cognizable, actionable violation of her constitutional rights.

Plaintiff's claim similarly fails with respect to Defendant Murphy's alleged improper assignment of a cell shield. It has been established that "state procedural requirements do not establish federal constitutional rights" in the prison context. *Bolden v. Alston*, 810 F.2d 353, 358 (2d Cir. 1987); *see also Shepherd v. Fisher*, No. 08-CV-9297, 2017 WL 666213, at *36 (S.D.N.Y. Feb. 16, 2017) (explaining that "the violation by prison officials of state regulations or DOCCS directives "does not in itself give rise to a due process claim" (internal quotation marks omitted)). Here, Plaintiff's claim of improper cell shield assignment would, at most, amount to a violation of DOCCS policy. (Compl. § II(D).) DOCCS regulations require that "[a] copy of the cell shield order and any renewal thereafter shall be forwarded to . . . the inmate within 24 hours." 7 N.Y.C.R.R. § 305.6(d). Here, Plaintiff claims that Murphy "had [her] on a cell-shield [without] an order extension." (*Id.*) Theoretically, Plaintiff's claim could be liberally construed as an alleged Due Process violation. *See Sykes*, 723 F.3d at 403; *Shepherd*, 2017 WL 666213, at *36 (explaining when the due process clause applies to prisoners' claims). However, cell shield requirements are governed by New York rules and regulations. *See* 7 N.Y.C.R.R. § 305.6. Murphy's alleged actions may have violated of DOCCS policy, but because they involve state procedural requirements, Plaintiff's claims in this area do not rise to the level of a constitutional violation. *See Bolden*, 810 F.2d at 358 (violation of state procedural requirements do not implicate a plaintiff's constitutional rights). Therefore, because Plaintiff's allegations regarding

16

the cell shield do not amount to an actionable constitutional or statutory violation, she has not stated a valid claim and Defendant's Motion To Dismiss is granted in this respect.

### 4. Qualified Immunity

Because the Court has dismissed all of Plaintiff's claims, the Court declines to address the issue of Defendants' qualified immunity. (Defs.' Mem. at 9–10.)

### C. Dismissal Without Prejudice

A complaint should be dismissed without prejudice if the pleading, "'liberally read,' suggests that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (alterations and citation omitted) (quoting *Gomez v. USAA Fed Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). If a complaint, however, has substantive problems and "[a] better pleading will not cure [them]" repleading may be "futile." *Id.* (citing *Hunt v. All N. Am. Gov't Income Tr.*, 159 F.3d 723, 728 (2d Cir. 1998)).

Here, despite failing to oppose the Moving Defendants' Motion, Plaintiff has nevertheless not been afforded an opportunity to amend her Complaint. Moreover, there is reason to suspect that, if given an opportunity to amend, Plaintiff might be able to cure the substantive deficiencies in her Complaint. Therefore, Plaintiff's dismissed claims herein are dismissed without prejudice.

### III. Conclusion

In light of the foregoing, Moving Defendants' Motion To Dismiss is hereby granted and Plaintiff's claims are dismissed without prejudice. If Plaintiff wishes to file an Amended Complaint, she must do so within 30 days of the date of this Opinion & Order. Failure to do so might result in dismissal of this case. Plaintiff should include within that Amended Complaint

any changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. The Amended Complaint will replace, not supplement, the original complaint. The Amended Complaint must contain *all* of the claims and factual allegations the Plaintiff wishes the Court to consider.

The Clerk of the Court is to terminate the pending motion (Dkt. No. 20) and mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

DATED: February 7, 2018
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE